### HASKINS v. LEWIS.

LIABILITY FOR BROKER'S COMMISSION NOT RELEASED FROM BY REFUSAL TO ACCEPT
ORDER AND PAY COMMISSION.

  Refusal of a principal to accept an order from his broker for the reason
    that there could be no profit on the sale, after payment of the broker's
    commission, will not relieve the principal from liability for such com-
    mission upon his accepting the same contract direct from the customer,
    there being no evidence that the broker released his principal there-
    from, and it appearing that the course of dealing between the principal
    and broker was not terminated.

[Syllabus approved by the court.]

ERROR to Hamilton common pleas court.

**Roettinger & Gorman,** for plaintiff in error.

**A. B. Benedict,** for defendant in error.

SWING, J.

This was an action for a brokerage commission by Lewis against
Haskins on a certain glassware contract. There is little dispute as to
the facts. The evidence is largely made up of correspondence between
the parties. In brief, it shows that during the year 1904, Lewis was
a glass broker, doing business in Cincinnati, and Haskins was a glass
manufacturer, doing business at Martins Ferry, Ohio. In the early part
of this year the parties commenced transacting business with each other,
Lewis as broker and Haskins as manufacturer, and this relation con-
tinued during this year to the entire satisfaction of both parties, al-
though it was claimed by Haskins that he had not made any money on
certain of the contracts, but it was not charged that this was by reason
of any fault of Lewis as broker.

It appears that Haskins during this year had accepted through
Lewis a contract to furnish certain goods to the Standard Oil Com-
pany. Haskins was not able to supply all the goods desired by the
Standard Oil Company owing to the fact that his factory had not been
fully equipped, but it appears from the correspondence that Haskins
was desirous that Lewis should get for him the entire contract of the
Standard Oil Company for the year 1905. This contract was very
large, consisting of ten thousand barrels. This contract was to be let
in the early part of January, 1905. On January 3, 1905, Lewis went

to Wheeling, West Virginia, with this contract and met Haskins and urged him to accept it. There is a conflict in the evidence as to what was said between the parties about this contract at this meeting, but we don't regard a decision as to this conflict as determining the rights. of the parties in this action. Haskins said at this conference that he told Lewis that he had lost money on the Standard Oil contract for the year 1904, and that he would never sign the contract for the ten thousand barrels at the price named, to wit, $2.10 per barrel and pay Lewis a commission of 5 per cent, which was the amount of the commission that. the parties had agreed Lewis should receive in this business and which amount had been .paid him the year previous. Lewis denied that Haskins made such a statement. But disregarding this conflict it is. clear that at this meeting Haskins objected to entering into this contract at the price offered, and that Lewis urged its ¡acceptance.

Afterwards, on or before January 23, Haskins entered into the contract with the Standard Oil Company for the ten thousand barrels. at the price named, to wit, $2.10 per barrel, for the year 1905. Lewis. demanded his commission of 5 per cent on this contract, which being refused he brought this action and recovered in the court of common pleas.

The answer of Haskins was a general denial and a further defense that he had notified Lewis that he would not accept this particular contract through him, presumably for the reason which he says in his evidence, that he told Lewis on January 3 that he could not accept the contract and pay him 5 per cent commission and come out whole. There is no evidence which tends to show that at the conference on January 3, 1905, the relation of broker and manufacturer had been broken off or terminated. Lewis still continued to urge Haskins to accept this contract and after Haskins had made the contract with the Standard Oil Company he, Haskins, still wanted to do other business. with Lewis. The reason given by Haskins for making the contract with the Standard Oil Company was that the low prices did "not carry a profit justifying a commission" to Lewis. There being no controversy as to the facts, it becomes a question of law for the court.

Lewis during a course of business which existed between him and Haskins, as a broker, brings to Haskins a contract which Haskins accepts. Is Haskins liable to Lewis for the commission? On all other contracts which Lewis had brought to Haskins he had paid Lewis commissions in accordance with their agreement. Why should he not pay this commission? Haskins' reason why he is not liable is, that he told

Lewis on January 3 that he would never enter into the contract and pay him a commission, and further that he wrote Lewis on January 23, after the contract was made, that he made the contract with the Standard Oil Company direct, for the reason that the profits would not justify a commission. There is no claim that Lewis agreed to release Haskins from the payment of the commission.

The decisions on brokerage commissions are mostly on real estate sales, but the principle seems equally applicable to all brokerage commissions. The principle applicable to such contracts is thus stated in *Desmond* v. *Stebbins*, 140 Mass. 339 [5 N. E. Rep. 150]:

"If the owner of land employs a broker to sell it for a stipulated compensation, the broker is entitled to receive that sum, if in pursuance of his employment he substantially effects a sale by introducing to the owner a person to whom the owner sells the land."

In this case, the facts are undisputed that Lewis furnished to Haskins a customer, to wit, the Standard Oil Company, with whom Haskins contracted on the terms of the proposition as submitted by Lewis; and on all such contracts it was agreed between Lewis and Haskins that Lewis should receive 5 per cent as a commission. It seems to us clear that Lewis should recover. The fact that Haskins said he told Lewis that he would not enter into the contract and pay him a commission, even if true, would not relieve him from his obligation to pay Lewis his commission, unless Lewis had agreed to it, and there is no claim made that Lewis ever assented to this.

The case of *Neracker Sprinkling Co.* v. *Eureka Co.* 4 Circ. Dec. 493 (8 R. 513), relied on by plaintiff in error, does not seem to us to be controlling in this case. The facts in that case differ materially from those in this case. When the contract was made in that case the Eureka Company was no longer the agent of the other company, while in this case the contract was entered into while the relation of broker still existed.

The facts being admitted, the case became one for the court, and if the judgment is correct, and we think it is, errors in the charge of the court to the jury, if any, are immaterial.

Judgment affirmed.

**Giffen** and **Smith, JJ.,** concur.